UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

------------------------------------------------------- X
COMCAST CABLE COMMUNICATIONS :  Index No.: 24-CV-60981-XXXX
MANAGEMENT, LLC,        :
                 :
      Plaintiff,     :
                 :   **JURY TRIAL DEMANDED**
  -against-          :
                 :
LIBERTY INSURANCE CORPORATION,:
THE NORTH RIVER INSURANCE   
COMPANY and CCU, LLC,     :

      Defendants.
------------------------------------------------------- X

**COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT**

    Plaintiff Comcast Cable Communications Management, LLC ("Comcast") as and for its Complaint against Defendants Liberty Insurance Corporation ("Liberty"), The North River Insurance Company ("North River") and CCU, LLC ("CCU") (collectively, the "Defendants") allege as follows:

**NATURE OF THE ACTION**

    1.  This action arises out of Comcast's claim for insurance coverage, including defense costs and any future damages, arising from the action entitled *Miami-Dade County v. D&M Trenching Corp. and Comcast ABB Management, LLC*, Case No. 2022-022735 CA 01, currently pending in the Circuit Court in and for Miami-Dade County, Florida (the "Miami-Dade Action") under the Commercial General Liability Insurance Policy sold by Liberty and the Commercial Umbrella Policy sold by North River to Comcast's general contractor, CCU.

    2.  As discussed in greater detail below, in January of 2019, Comcast and CCU entered into a Preferred Construction Agreement (the "Agreement"), pursuant to which Comcast and CCU agreed that the parties would "from time to time enter into Work Documents setting

forth Work" that CCU would perform on behalf of Comcast. The Agreement further provided that CCU was required to obtain and maintain various types of insurance including Commercial General Liability Insurance ("CGL Insurance") with limits of no less than $1 million, and Umbrella Excess Liability Insurance with limits of no less than $5 million, naming Comcast as an additional insured.

3. Pursuant to the Agreement, CCU agreed that each of the liability insurance policies specified under the agreement "shall extend the same coverage to the additional insured that is offered to the named insured" and that "[n]o insurance policy shall be limited to liability arising from or caused by the sole negligence of [CCU] or any Subcontractor."

4. In January of 2019, in accordance with the terms of the Agreement, CCU and Comcast agreed that CCU would install broadband cable products in the Florida region. CCU then subcontracted the work to D&M Trenching Corp. ("D&M"), which undertook the performance of the work.

5. On or about February 20, 2019, while performing the work subcontracted by CCU, D&M allegedly damaged an underground pipe owned by the Miami-Dade Water and Sewer Department ("Miami-Dade").

6. Miami-Dade subsequently filed the Miami-Dade Action against Comcast and D&M (the "Miami-Dade Complaint").

7. The Miami-Dade Complaint alleges property damage caused by the acts and/or omissions of D&M, CCU's subcontractor, in the performance of ongoing operations, and as such triggers coverage for Comcast as an additional insured under the Commercial General Liability Insurance Policy sold by Liberty to CCU (the "Primary Policy"), and under the Commercial Umbrella Policy sold by North River to CCU (the "Umbrella Policy").

8. Accordingly, Liberty must defend and indemnify Comcast for all liability arising out of the alleged property damage, and North River must provide coverage in excess of the Primary Policy limits.

9. Based on the foregoing, Comcast seeks a declaration that Liberty must defend and indemnify Comcast in connection with the Miami-Dade Action under the terms of the Agreement and the Primary Policy, as well as damages for the Liberty's breach of its contractual obligations, including pre- and post-judgment interest, and all other damages resulting from Liberty's improper refusal to honor its coverage obligations. Moreover, Comcast seeks a declaration that North River's coverage obligations to Comcast in the Miami-Dade Action under the Umbrella Policy are triggered upon exhaustion of the Primary Policy.

10. In the alternative, and without waiving additional insured claims against Liberty and North River, if Comcast is not an additional insured under the Primary Policy and Umbrella Policy, or if Comcast is not afforded the same coverage that is offered to CCU as the named insured under the policies, CCU breached its contractual obligations to secure liability insurance coverage for the defense and indemnity of Comcast as an additional insured. Therefore, in the alternative, Comcast seeks a declaration that CCU breached its contractual obligations to make Comcast an additional insured on its respective liability insurance policies and otherwise secure coverage for defense and indemnity of Comcast under CCU's contracts with Liberty and North River.

**THE PARTIES**

11. Plaintiff Comcast Cable Communications Management, LLC is a Delaware limited liability company, and its members are incorporated in the state of Delaware and the Commonwealth of Pennsylvania. Comcast is authorized to do business in the state of Florida.

12.     Upon information and belief, Defendant Liberty is an Illinois corporation with its principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.

13.     Upon information and belief, Defendant North River is a New Jersey corporation with its principal place of business at 305 Madison Avenue, Morrison, New Jersey 07960.

14.     Upon information and belief, Defendant CCU is a Florida limited liability company.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).  The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff Comcast and Defendant Liberty.

16.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

17.     Liberty is subject to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193 because Liberty regularly engages in the business in the state of Florida.

## BACKGROUND

### The Agreement Between Comcast and CCU

18.     Comcast and CCU entered into the Preferred Construction Agreement effective on January 1, 2019.  A copy of the Agreement is attached is **Exhibit A**.

19.     Per the terms of the Agreement, Comcast and CCU agreed that, during the term of the Agreement, Comcast and CCU would "from time to time enter into Work Documents setting forth Work" that CCU would perform on behalf of Comcast.  Ex. A, Agreement, Section 2(a), Work Documents.

20. "Work" is defined in the Agreement as "any construction work required by the Documents issued pursuant to this Agreement." *Id*., Agreement, Section 1, Definitions.

21. Section 13 of the Agreement states as follows:

> 13. **Insurance**.
>
> (a) [CCU] shall on its own behalf, and shall cause each of its Subcontractors to, obtain and maintain throughout the Term of this Agreement valid insurance for all states in which they work with coverage and limits as follows:
>
> \*   \*   \*
>
> (ii) **Commercial General Liability Insurance**: Covering Operations and Premises Liability; Independent Contractor's Liability; Completed Operations; Product Liability; Contractual Liability; Bodily Injury; Property Damage caused by explosion, collapse and underground damage; and Personal & Advertising Injury. The limits of such liability insurance shall be no less than One Million Dollars ($1,000,000) combined single limit of liability for each occurrence and Two Million Dollars ($2,000,000) in the aggregate for bodily injury (BI) and property damage (PD) for each occurrence;
>
> \*   \*   \*
>
> (iv) **Umbrella Excess Liability**: Coverage in an amount no less than Five Million Dollars ($5,000,000) for each occurrence; …

*Id*., Agreement, Section 13.

22. Per the Agreement, all insurance referenced in the Agreement, including the CGL Insurance, shall name Comcast and all affiliates of Comcast as additional insured parties and shall be "primary and noncontributory." *Id*., Agreement, Section 13(c).

23. Per the Agreement, each of the liability insurance policies specified under the Agreement "shall extend the same coverage to the additional insured that is offered the named insured." *Id*., Agreement at Section 13(c)(ii). Moreover, per the Agreement, "[CCU] shall require each insurer to pay on behalf of each additional insured any and all expenses incurred by

reason of the insured claim, including, without limitation, court costs and reasonable attorneys' fees." *Id*.

24. The Agreement further provides that "No insurance policy shall be limited to liability arising from or caused by the sole negligence of [CCU] or any Subcontractor or any other limitation that is based upon the status or conduct of [CCU] or Subcontractor." *Id*., Agreement at Section 13(c)(i).

25. Accordingly, CCU's obligation to procure insurance naming Comcast and all affiliates of Comcast as an additional insured is clearly established in the Agreement.

## The Insurance Policies

26. Liberty sold CCU Commercial General Liability Policy No. TB7-Z91- 460766-028, which provides insurance coverage for occurrences taking place between June 1, 2018 and June 1, 2019. A copy of the Primary Policy is attached as **Exhibit B**.

27. Pursuant to the terms of the Primary Policy, Liberty agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Ex. B, Primary Policy, Section I.1.a., p. 1 of 16. Liberty also has the "right and duty to defend the insured against any 'suit' seeking those damages." *Id.*

28. The Primary Policy provides that Comcast is an additional insured.

29. Specifically, the terms of the Primary Policy provide that "[t]he following are insureds under the policy when [the named insured] ha[s] agreed in a written contract or written agreement to provide them coverage as additional insureds under your policy:

> **(4) Owners, Lessees or Contractors**: any person(s) or organization(s) **to whom you are obligated by a written agreement to procure additional insured coverage**, but only with respect to liability for "bodily injury" "property damage" or

> "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of your "employees", your agents, **or your subcontractors**, in the performance of your ongoing operations.
>
> There is no coverage for the additional insured for liability arising out of the sole negligence of the additional insured or those acting on behalf of the additional insured, **except as provided below**.
>
> **If the written agreement obligates you to procure additional insured coverage for the additional insured's sole negligence, then the coverage for the additional insured shall conform to the agreement**, but only if the applicable law would allow you to indemnify the additional insured for liability arising out the additional insured's sole negligence.

Ex. B, Primary Policy, Section II ("Who is an Insured"), as amended by CGL Enhancement for Contractors Form LC 04 43 05 12, Item 15 ¶ 2 (emphasis added).

30.     Comcast therefore constitutes an additional insured under the Primary Policy, which provides that any organization to whom CCU is obligated by a written agreement to procure additional insured coverage shall constitute an additional insured with respect to liability for property damage caused in whole or in part by CCU's acts or omissions **or the acts or omissions of CCU's subcontractors** in the performance of its ongoing operations. *Id*.

31.     Based upon the language in the Primary Policy and the Agreement, the Primary Policy provides coverage to Comcast as an additional insured for liability arising out of CCU's subcontractors (such as D&M's) and Comcast's own alleged negligence.

32.     North River sold CCU Commercial Umbrella Policy (Blanket Additional Insured, Primary & Non-Contributory, Waiver of Subrogation) Policy No. 5811105771, which provides insurance coverage for occurrences taking place between June 1, 2018 and June 1, 2019.  The Umbrella Policy also provides Blanket Additional Insured coverage to Comcast for the Miami-Dade Action.

**The Miami-Dade Action**

33. On or about December 26, 2018, the Florida Department of Transportation issued a utility permit to Comcast authorizing the construction of an underground fiber optic cable in the Florida region. Ex. A ¶¶ 9, 10.

34. Accordingly, pursuant to the Preferred Construction Agreement, Comcast and CCU agreed that CCU would install the broadband cable products in the Florida region. Ex. C ¶ 8. A copy of Comcast's Third-Party Complaint against CCU filed in the Miami-Dade Action dated August 28, 2023, is attached as **Exhibit C**.

35. CCU subsequently subcontracted the work to D&M, which undertook the performance of the work. Ex. D ¶ 7. A copy of the Third-Party Defendant CCU's Cross-Claim Against D&M in the Miami-Dade Action dated October 30, 2023 is attached as **Exhibit D**.

36. There is no contract between Comcast and D&M.

37. On or about February 20, 2019, while performing the work subcontracted by CCU, D&M allegedly damaged an underground pipe owned by the Miami-Dade Water and Sewer Department. Ex. D ¶ 15.

38. Miami-Dade subsequently filed an action against Comcast and D&M on November 30, 2022 in the Circuit Court in and for Miami-Dade County, Florida captioned *Miami-Dade County v. D&M Trenching Corp. and Comcast ABB Management, LLC*, Case No. 2022-0222735 CA 01. A copy of the Miami-Dade Complaint is attached as **Exhibit E**.

39. The Miami-Dade Complaint asserts a claim of negligence against Comcast and seeks approximately $6 million in damages. *Id*. ¶ 25

40. The Miami-Dade Complaint further alleges that D&M, while acting as an agent and subcontractor of CCU, damaged force mains while replacing a new fiber optic cable line for Comcast. *Id*. ¶¶ 21-25.

41. The Miami-Dade Action further alleges that D&M damaged Miami-Dade County's water and sewer distribution system and caused damages of approximately $6 million, and that Comcast is liable for these damages.

42. The claims against Comcast in the Miami-Dade Action arise directly and entirely from D&M's alleged failure to act with due care, not out of Comcast's own negligence. The Miami-Dade Action alleges $5,945,228.19 in damages for costs of labor, parts and repair. *Id*. ¶¶ 20, 36.

## Liberty's Improper Denial

43. Pursuant to the terms of the Primary Policy, Liberty agreed to pay "those sums that the insured [including Comcast as an additional insured] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Ex. B, Primary Policy, Section I.1.a., p. 1 of 16.

44. The Miami-Dade Action unambiguously triggers Liberty's coverage obligations under the Primary Policy for the Miami-Dade Action.

45. The Miami-Dade Action alleges that the property damage allegedly sustained by Miami-Dade was caused by the acts and/or omissions of D&M, CCU's subcontractor, in the performance of CCU's ongoing operations.

46. Accordingly, on July 21, 2023, counsel for Comcast timely tendered notice of the Miami-Dade Action to Liberty's policyholder, CCU. CCU and Liberty failed to respond. A copy of Comcast's tender demand is attached as **Exhibit F**.

9

47. Subsequently, seven months after Comcast tendered notice of the Miami-Dade Action to CCU, by letter dated February 20, 2024, Liberty responded on CCU's behalf refusing to honor its defense and indemnification obligations.

48. Liberty has no factual or legal basis for its refusal to defend and indemnify Comcast as an additional insured under the Primary Policy for the Miami-Dade Action. The claims against Comcast in the Miami-Dade Action arise directly and entirely from D&M's alleged failure to act with due care, and no Primary Policy exclusion applies to preclude coverage.

49. On February 22, 2024, Comcast reiterated its demand to Liberty on this basis. A copy of the February 22 Letter is attached as **Exhibit G**.

50. On February 29, 2024 and March 1, 2024, Liberty responded to Comcast's subsequent demand and again refused to honor its defense and indemnification obligations to Comcast as an additional insured under the Primary Policy. A copy of the February 29 Letter and the March 1 Letter are attached as **Exhibits H and I**.

51. Comcast also timely tendered notice of the Miami-Dade Action to North River under the Umbrella Policy for additional insured coverage. North River failed to acknowledge coverage of Comcast for the Miami-Dade Action.

52. The Miami-Dade Action triggers coverage of Comcast as an additional insured under the Umbrella Policy upon the exhaustion of the Primary Policy.

53. Accordingly, Comcast seeks a declaratory judgment that Liberty must defend and indemnify Comcast in the Miami-Dade Action as an additional insured party under the Primary Policy pursuant to the terms of the Agreement. Comcast further seeks damages for Liberty's breach of its contractual agreement.

54. Comcast also seeks declaratory judgment that North River honor its coverage obligations to Comcast in the Miami-Dade Action as an additional insured party under the Umbrella Policy pursuant to the terms of the Agreement upon the exhaustion of the Liberty Primary Policy.

55. Such judicial determination is necessary and appropriate at this time under the circumstances alleged.

## COUNT I
### Breach of Contract As Against Liberty
### (Defense and Indemnification Under the Primary Policy)

56. Comcast repeats and realleges the allegations set forth in paragraphs 1 through 55, as if fully set forth herein.

57. Comcast is an additional insured under the Primary Policy.

58. Under the terms of the Primary Policy, Liberty has a contractual obligation to defend and indemnify Comcast for the Miami-Dade Action.

59. Notwithstanding this obligation, Liberty, by denying or disputing its defense obligations for the Miami-Dade Action, and by refusing to acknowledge its indemnification obligations without limitation or reservation, has violated its obligations to Comcast as an additional insured, and therefore breached the Primary Policy.

60. Comcast has satisfied all obligations currently owing under the Primary Policy and has complied with all conditions necessary under the Primary Policy and Agreement.

61. Liberty's breaches, actions, and conduct described above constitutes a breach of contract.

62. As a result of Liberty's breach, Liberty is liable to Comcast for damages, the exact amount to be proven at trial, including but not limited to, compensatory damages,

consequential damages, punitive damages, attorneys' fees, expenses, and costs, plus pre- and post-judgment interest.

## COUNT II
### Declaratory Judgment As Against Liberty
### (Defense and Indemnification Under the Primary Policy)

63. Comcast repeats and realleges the allegations set forth in paragraphs 1 through 62, as if fully set forth herein.

64. This is an action for declaratory relief pursuant to Florida Statutes Chapter 86 and the court's general equity powers to declare the Plaintiff's rights and obligations under a contract of insurance.

65. Comcast seeks declaratory judgment for the purpose of determining questions of controversy between the parties regarding the Primary Policy.

66. The Miami-Dade Action triggers Liberty's defense and indemnification obligations under the Primary Policy.

67. Liberty breached its obligations under the Liberty Primary Policy by failing to honor or by disputing its obligations under the Primary Policy to Comcast as an additional insured with respect to the Miami-Dade Action.

68. Comcast is entitled to declaratory judgment of its and Liberty's rights and obligations under the Primary Policy with respect to the Miami-Dade Action.

69. Declaratory relief is proper to determine whether losses arising out of the Miami-Dade Action are covered under the Primary Policy and to determine the proper interpretation and construction of the insurance policy terms.

70. The interpretation of the Primary Policy, as interpreted by Liberty concerning the issues herein, is wrong and/or creates at least an ambiguity in regard to Primary Policy

12

interpretation and, as such, Comcast is entitled to an interpretation in its favor and in favor of coverage for defense and indemnity.

71. The actions taken by Liberty, based on the Liberty's unilateral interpretation of the express and implied terms of the Primary Policy, conflict with Comcast's interpretation of the express and implied terms of the Primary Policy and/or Florida law.

72. Due to Liberty's actions and inactions, Comcast is unsure of its rights, obligations, and status in regard to the Primary Policy in its entirety, and Comcast seeks a declaration of its rights, obligations, and status, in accordance with the Primary Policy and Florida law.

73. An action and justiciable controversy has arisen between Comcast and Liberty as to the meaning and application of the Agreement, including whether Liberty must defend and indemnify Comcast for the Miami-Dade Action.

74. Liberty's incorrect interpretation of the Primary Policy and Florida law has created the need for a declaration by the court on the following issues:

   a. Liberty is obligated pay Comcast's defense costs arising out of the Miami-Dade Action pursuant to the terms of the Primary Policy.

   b. Liberty is obligated pay any future damages incurred by Comcast, including any judgment or settlement, arising out of the Miami-Dade Action pursuant to the terms of the Primary Policy.

75. Pursuant to Florida Statutes Chapter 86, the Court has the jurisdiction and power to construe relations that are affected by the construction of a contract/Primary Policy and issue a declaratory decree/judgment in regard to same.

76. Liberty's conduct has created doubt or uncertainty as to Comcast's rights or status of the applicable policy and Comcast seeks a declaration of those rights and status.

77. Comcast thus seeks a judicial determination by this Court of Liberty's obligation to defend and indemnify Comcast for the Miami-Dade Action.

78. Due to Liberty's conduct, the Comcast has been obligated to retain undersigned counsel to bring this action and, pursuant to Florida Statute 57.105 and others, undersigned counsel is entitled to an attorney's fee in this matter to be paid by Liberty.

79. Such judicial determination is necessary and appropriate at this time under the circumstances alleged.

## COUNT III
### Declaratory Judgment As Against North River
### (Defense and Indemnification Under the Umbrella Policy)

80. Comcast repeats and realleges the allegations set forth in paragraphs 1 through 79, as if fully set forth herein.

81. This is an action for declaratory relief pursuant to Florida Statutes Chapter 86 and the court's general equity powers to declare the Plaintiff's rights and obligations under a contract of insurance.

82. Comcast seeks declaratory judgment for the purpose of determining questions of controversy between the parties regarding the Umbrella Policy.

83. The Miami-Dade Action triggers North River's defense and indemnification obligations under the Umbrella Policy upon the exhaustion of the Primary Policy.

84. Liberty breached its obligations under the Umbrella by failing to acknowledge its obligations under the Umbrella Policy to Comcast as an additional insured with respect to the Miami-Dade Action upon the exhaustion of the Primary Policy.

85. Comcast is entitled to declaratory judgment of its and North River's rights and obligations under the Umbrella Policy with respect to the Miami-Dade Action.

86. Declaratory relief is proper to determine whether losses arising out of the Miami-Dade Action are covered under the Umbrella Policy and to determine the proper interpretation and construction of the insurance policy terms.

87. The interpretation of the Umbrella Policy, as interpreted by North River concerning the issues herein, is wrong and/or creates at least an ambiguity in regard to the Umbrella Policy interpretation and, as such, Comcast is entitled to an interpretation in its favor and in favor of coverage for defense and indemnity.

88. Due to North River's actions and inactions, Comcast is unsure of its rights, obligations, and status in regard to the Umbrella Policy in its entirety, and Comcast seeks a declaration of its rights, obligations, and status, in accordance with the Umbrella Policy and Florida law.

89. An action and justiciable controversy has arisen between Comcast and North River as to the meaning and application of the Agreement, including whether North River must defend and indemnify Comcast for the Miami-Dade Action upon exhaustion of the Primary Policy.

90. Pursuant to Florida Statutes Chapter 86, the Court has the jurisdiction and power to construe relations that are affected by the construction of a contract/Umbrella Policy and issue a declaratory decree/judgment in regard to same.

91. Comcast thus seeks a judicial determination by this Court of North River's coverage obligations to Comcast for the Miami-Dade Action as an additional insured upon the exhaustion of the Primary Policy.

92. Due to North River's conduct or inaction, the Comcast has been obligated to retain undersigned counsel to bring this action and, pursuant to Florida Statute 57.105 and others, undersigned counsel is entitled to an attorney's fee in this matter to be paid by North River.

93. Such judicial determination is necessary and appropriate at this time under the circumstances alleged.

## COUNT IV
## Breach of Contract As Against CCU

94. Comcast repeats and realleges the allegations set forth in paragraphs 1 through 93, as if fully set forth herein.

95. In the alternative, and without waiving additional insured claims against Liberty and North River, if (i) Liberty and North River are not additional insureds under the Primary Policy or the Umbrella Policy; (ii) the Primary Policy and Umbrella Policy fail to provide the same coverage to Comcast as the additional insured that is offered to CCU as the named insured; or (iii) that Primary Policy and Umbrella Policy fail to provide coverage to Comcast for its own alleged negligence (not limited to the sole negligence of CCU or D&M), then CCU breached its contractual obligation to make Comcast an additional insured and to secure liability insurance coverage for defense and indemnity obligations under CCU's contracts with Liberty and North River.

96. Under the terms of the Agreement, CCU has a contractual obligation to obtain and maintain Commercial General Liability Coverage and Umbrella Excess Coverage on a "primary and non-contributory" basis that provides "the same coverage to the additional insured [Comcast] that is offered to the named insured [CCU]."

97. Notwithstanding this obligation, Liberty and North River have refused to honor their obligations to defend and indemnify Comcast as an additional insured under the applicable

policies for the Miami-Dade Action. As such, CCU, by failing to obtain and maintain Commercial General Liability Coverage and Umbrella Excess Coverage to Comcast as an additional insured, has violated its obligations to Comcast, and therefore breached the Agreement.

98. Comcast has satisfied all obligations currently owing under the Agreement and has complied with all conditions necessary under the Agreement.

99. CCU's breaches, actions, and conduct described above constitutes a breach of contract.

100. As a result of CCU's breach, CCU is liable to Comcast for damages, the exact amount to be proven at trial, including but not limited to, compensatory damages, consequential damages, punitive damages, attorneys' fees, expenses, and costs, plus pre- and post-judgment interest.

**WHEREFORE**, Comcast respectfully requests judgment as follows:

With respect to the First and Fourth Causes of Action, a judgment:

a. Awarding money damages, including but not limited to, compensatory and consequential damages, in an amount to be determined at trial, and attorneys' fees, expenses, and costs incurred in this action, plus prejudgment and post-judgment interest; and

b. Granting Comcast such other and further relief as the Court may deem just and proper.

With respect to the Second and Third Causes of Action, a judgment:

a. Declaring that Liberty must defend and indemnify Comcast for the Miami-Dade Action under the Primary Policy;

b.  Declaring that North River must defend and indemnify Comcast for the Miami-Dade Action under the Umbrella Policy upon exhaustion of the Primary Policy;

c.  Granting Comcast its attorneys' fees, expenses, and costs incurred in this action; and

d.  Granting Comcast such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated:  June 7th, 2024

By: _____

Michael P. Rudd, Esq.
(Florida Bar No. 782416)
RUDD LAW, LLC
200 South Andrews Ave.
Suite 800
Fort Lauderdale, FL 33301
Tel. (954) 961 – 5059
Fax. (954) 961 – 8953
Email. mrudd@ruddlawyers.com

Diana Shafter Gliedman, Esq.*
Regan E. Samson, Esq.*
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10128
Tel. (212) 278 – 1013
Fax. (212) 278 – 1078
*Pro Hac Vice admission pending

*Attorneys for Plaintiff Comcast Cable Communications Management, LLC*